UNITED STATES v. HOYT et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,575.

INDIANS (§ 4*) — INDIAN COMMISSIONERS — SALARIES — CONSTRUCTION OF CONTRACT FOR SERVICES—"ACTUALLY ENGAGED."

Under an appointment of defendant by the Secretary of the Interior as an Indian commissioner to study the needs of and negotiate treaties with certain Indian tribes as directed, at a salary of $8 per day and actual traveling expenses, the salary to begin when defendant left his home and to be paid while "actually engaged" in the performance of his duties, he was entitled to salary so long as he remained away from home at the places to which he was assigned, performing such duties as directed and reporting regularly, and not merely for the days on which he was actively engaged in the performance of some duty, and especially where defendant, as disbursing officer for the commission, paid himself and the other commissioners on such construction of the contract, and his reports and vouchers therefor were regularly approved, showing that such was the construction placed upon the contract by both parties.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 9; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 1, p. 172.]

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

For opinion below, see 158 Fed. 162.

A. G. Avery, U. S. Atty., and J. B. Lindsley, Asst. U. S. Atty. Cyrus Happy and W. W. Hindman, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The defendant in error, Hoyt, was appointed one of three commissioners to negotiate certain agreements with certain Indians, and was also made disbursing agent of the commission. Subsequent to the termination of his service, the government brought the present suit against him and his surety, his codefendant in error, to recover the aggregate amount of certain disbursements made by him, and which had been theretofore allowed and paid by the accounting and disbursing officers of the government. There is no dispute between the parties as to the amount the government is entitled to recover in the event it is entitled to judgment here at all.

The act making appropriations for the Indian Department for the fiscal year 1897, approved June 10, 1896 (Act June 10, 1896, c. 398, 29 Stat. 341), contained this provision:

"The Secretary of the Interior is hereby authorized to appoint a commission to consist of three persons, not more than two of whom shall be of the same political party, and not more than one of whom shall be a resident of any one state, to negotiate with the following Indians, namely:

"With the Crows and Flathead Indians in the state of Montana, for cessions of portions of their respective reservations; with the Northern Cheyennes and Crow Indians for the removal of said Northern Cheyennes from their present reservation on the Rosebud river at Lame Deer agency, to the southern portion of the Crow Reservation; with the Indians residing on the Fort Hull Indian Reservation in the state of Utah, for the surrender of any portion of their respective reservations, or for such modification of existing treaties as may be deemed desirable by said Indians and the Secretary of the Interior; and with the Yakima Indians in the state of Washington, for a surrender of a portion of their reservation lands, and for such modification of existing treaties as may be deemed desirable by said Indians and the Secretary of the Interior; any agreement thus negotiated being subject to subsequent ratification by Congress; and for the expenses of such commission and negotiations hereunder, the sum of ten thousand dollars is appropriated. * * *"

Appropriations were made for subsequent fiscal years for continuing the work of such commission (Act July 1, 1898, c. 545, 30 Stat. 592; Act June 6, 1900, c. 785, 31 Stat. 302; 31 Stat. 1041).

Act June 6, 1900, 31 Stat. 302, contained this provision:

"For continuing, after the passage of this act, and during the fiscal year 1901, the work of the commission under the act of Congress approved June tenth, eighteen hundred and ninety-six, to negotiate with the Crows, Flathead, and other Indians, fifteen thousand dollars, and the members of said commission shall perform such duties as may be required of them by the Secretary of the Interior."

The statute did not fix the compensation of the commissioners, but left that to the Secretary of the Interior, under whose direction the law was to be executed.

The case shows that Hoyt, of Beatrice, Neb., James H. McNeely, of Evansville, Ind., and B. J. McIntyre, of Kalispell, Mont., were the commissioners appointed by the Secretary of the Interior under and by virtue of the statute of June 10, 1896, and June 6, 1900, above referred to; the appointment of Hoyt, under the hand and seal of the Secretary, declaring that the commissioner was appointed for the purposes stated, and upon these terms and conditions:

"At $8 per diem, and actual and necessary traveling expenses, exclusive of subsistence, to take effect July 1, 1900, or as soon thereafter as he shall file the oath of office and enter on duty, and empower him to execute and fulfill the duties of that office according to law; and to hold the said office, with all the rights and emoluments thereunto legally appertaining, to him, the said Charles G. Hoyt, during the pleasure of the Secretary of the Interior."

Hoyt's appointment as commissioner was made June 25, 1900, and on the 11th of July following the Secretary appointed him special disbursing agent of the commission, and required him to file an official bond in the penal sum of $5,000. On the 14th day of July, 1900, the Commissioner of Indian Affairs sent to Hoyt his appointment as commissioner, and a copy of certain instructions addressed to the three commissioners under date July 6, 1900, inclosed in the following letter:

"Department of the Interior.
"Land Office of Indian Affairs.

"30378–1900                                      Washington, D. C., July 14, 1900.
"33170– "

"Charles G. Hoyt, Esq., Crow, Flathead, &c., Commissioner, Beatrice, Neb.

"Sir: There is transmitted to you herewith your appointment dated June 25, 1900, as a member of the Crow-Flathead, &c., Commission, at a salary of $8 per day and actual and necessary traveling expenses, exclusive of subsistence, the same to take effect upon filing the oath of office and entering on duty. There is also inclosed copy of a draft on (of) instructions for the guidance of the members of said commission, dated July 6, 1900. Mr. James H. McNeely has been designated chairman of said commission. You will proceed from your home to the Yakima Agency by the most direct practical route, taking receipts for expenditures made for traveling expenses and reimburse yourself therefor. You will take the oath of office and proceed to your field of duty without unnecessary delay. Your salary will be regarded as having begun on the day when you depart from your home for the Yakima Agency, provided the oath of office shall have been taken and mailed to this office. Blank form for oath is enclosed. You will please acknowledge the receipt of your commission and of the instructions herewith and advise the office of the date of your departure to enter upon the duties assigned you. You have been designated disbursing officer of the Commission, and this will be the subject of another communication.

"Very respectfully,                               W. A. Jones, Commissioner."

The record shows that McNeely died April 6, 1902, that McIntyre's services terminated September 30, 1901, and that Hoyt's services were dispensed with by the department on July 30, 1902, for the reason that Congress made no appropriation for continuing the work of the commission. The record further shows that Hoyt was a member of a previous similar commission, during the existence of which he did most of the work involved in keeping its accounts, for which reason he was designated disbursing officer of the commission in ques-

The general letter of instructions of July 6, 1900, above referred to, addressed to Commissioners McNeely, Hoyt, and McIntyre, contained specific instructions to them in respect to their negotiations with the Yakima and Flathead Indians. Among other things, they were directed first to take up negotiations with the Yakimas, and upon completion of their work on the Yakima reservation, or, in case no agreement with the Yakimas could be concluded, to advise the office promptly and request further instructions, and upon the completion of the work with the Yakimas to proceed to the Flathead reservation and take up the work there. They were instructed that the most important part of their duties would be to study the special needs of the Indians in each case, in order that such agreements might be formulated as would best tend to promote their welfare; and numerous suggestions were made to them in that regard, and they were enjoined that in the event of the making of the contemplated agreements, to use the greatest care that they were "perfect in every detail, including spelling, punctuation, etc., and that they clearly expressed the objects and purposes intended to be attained"; and they were required to send all correspondence to the Commissioner of Indian Affairs, and to submit promptly at the close of each week a report showing the state of the work, the progress made, what was accomplished during the week past, etc. And the letter of general instructions closed with these words:

"These instructions must not be deviated from in any material particular, and should you deem deviation desirable at any time, you will submit a statement of facts to this office, and request further instructions. You will be allowed compensation at the rate of eight dollars ($8.00) per day while actually engaged in the performance of your duties, also actual necessary traveling expenses. Your salaries will begin on the date of taking the oath of office and entering upon the discharge of your duties. * * * You will proceed, without unnecessary delay, to the Yakima Indian Agency, Fort Simcoe, Washington."

The case further shows that, while Hoyt was serving under the former similar commission referred to, he was orally instructed at Washington, by an official of the Treasury Department, and with the approval of the Commissioner of Indian Affairs, that in paying the compensation of members of such commission a voucher should be taken, indorsed with the certificate of the payee, and approved by the chairman of the commission, substantially in these words:

"That during the period covered by the within voucher, I have been employed under the direction of the Secretary of the Interior, in the duties enjoined by the statutes pertaining to my office"

—and upon the trial Hoyt testified that, when he was appointed disbursing agent of the commission in question, he adopted the practice thus suggested and followed under the preceding commission. These vouchers were sent by him to the Commissioner of Indian Affairs, and were audited and approved by the Interior Department and paid by the Treasury Department. The accounts included payments to each of the commissioners for the whole time covered by their commission.

It appears that subsequently a question arose in respect to the compensation that had been allowed McIntyre, who had procured leave of absence without pay, on account of the illness of his wife, and who, subsequently being directed by the Secretary of the Interior to perform a certain service, announced, on the 16th day of May, 1902, his inability to comply with the order. The work that McIntyre was so directed to perform was performed by some one else, and thereafter he was not assigned to any further duty and performed no further service.

We are not called upon in this case to decide whether or not it was rightly held that McIntyre was not entitled to compensation after May 16, 1902. In the case of Hoyt there does not appear to have been any leave of absence, conditioned without pay, nor was there any refusal on his part to perform any service required of him; but, on the contrary, according to the record, he remained away from his home, and in the field of operations to which he was sent, ready and willing at any time to perform any duty required of him as such commissioner and disbursing agent, and regularly reporting such services as he did perform. And the question here for decision is whether he was therefore entitled to the $8 a day, that he was allowed and paid, from the time he entered upon the discharge of his duties until July 30, 1902, when his services were dispensed with.

We think the court below rightly held that he was. The case does not wholly depend upon the single clause in the general instructions of July 6, 1900, reading as follows:

"You will be allowed compensation at the rate of eight dollars ($8.00) per day while actually engaged in the performance of your duties"

—with the word "actually" therein construed as "actively." The rights of the parties must be determined in view of the appointments of Hoyt as commissioner and as disbursing agent, and in view of the letter of the Secretary inclosing his commission, as well as the letter of general instructions of July 6, 1900. Looking only at the latter, we find immediately following the clause above quoted, and upon which so much reliance is placed by the plaintiff in error, the statement to the commissioners:

"Your salaries will begin on the date of taking the oath of office and entering upon the discharge of your duties."

We think such must have been the reasonable understanding of the appointees, as well as of the appointing officer. In the case of Hoyt —the only one before us—it appears that he promptly took the oath of office and thereupon went into the field of operations to which he was assigned, and remained there, away from his home, performing such duties as he was directed to perform, and was at all times willing and ready to do so. We can see no just or legal ground upon which to take from him compensation therefor, from the time of his entry upon his duties until his services were dispensed with, at the rate fixed by the Secretary. This conclusion is in accord with the action of that officer in the case of Commissioner McNeely, where the Acting Secretary ruled, in his letter of June 3, 1902, as follows:

167 F.—20

"Although Commissioner McNeely left Muskogee for Evansville, Indiana, on March 8th, his voucher is allowed in full for the whole quarter, it appearing that he was sick, and died at his home April 6th, last."

The judgment is affirmed.